Mohammad IRANNEZHAD, Appellant,

v.

ALDINE INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 01–07–00794–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 20, 2008.

Mohammad Irannezhad, Humble, TX,
pro se.

Pamela Ann Walters, Houston, TX, for
Appellee.

Panel consists of Chief Justice
RADACK and Justices JENNINGS and
BLAND.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Mohammad Irannezhad, challenges the trial court's judgment rendered in favor of appellee, Aldine Independent School District ("Aldine"), in Aldine's suit against Irannezhad for delinquent post-judgment taxes that had accrued on a piece of real property ("the property") owned by Irannezhad. In three issues, Irannezhad contends that Aldine was not entitled to recover any post-judgment taxes after Aldine had sold all of its interest in the property to Irannezhad in 2005, Aldine used "unrelated Texas Tax Code [provisions] to overrule the tax law," and the trial court acted improperly in signing the judgment against him.

We affirm.

### Factual and Procedural Background

On September 19, 2002, Aldine and other taxing units, in an underlying proceeding, obtained a judgment for approximately $145,000 against the previous owners ("the Richey owners") of a piece of real property for delinquent taxes that had accrued on the property from 1987 to 2001.[1] In that case, the court, in its judgment, after noting that the adjudged value of the property was $52,450, ordered that the

---

1. *See Aldine Indep. Sch. Dist. v. Richey Family Trust No. 1,* No.2001–04514 (151st Dist. Ct., Harris County, Tex.).

plaintiff taxing units, including Aldine, "shall have foreclosure" of the tax liens taken against the property to secure the payment of the delinquent taxes. The court further ordered that the property be "sold in satisfaction of the amount of the judgment," and it directed the clerk of the court to issue an order of sale, upon the request of the plaintiff taxing units, commanding the Constable to sell the property pursuant to Chapter 34 of the Texas Tax Code.[2] The court expressly provided that its judgment was "without prejudice to the authority and power of the plaintiff taxing units to collect taxes or to maintain a suit or suits to enforce and recover any taxes for the 2002 tax year and/or subsequent years on the property herein described."

Following the entry of this judgment, Aldine continued to assess taxes against the property up until the tax sale, which occurred on September 2, 2003.[3] At the tax sale, which was conducted pursuant to section 34.01 of the Tax Code,[4] the minimum bid for the property was not received.[5] Accordingly, the property was "struck off"[6] to Aldine. The "Deed Under

2. *See* Tex. Tax Code Ann. §§ 34.01–34.23 (Vernon 2001 & Supp.2007); *see also id.* § 33.53(a), (b) (Vernon 2001) ("If judgment in a suit to collect a delinquent tax is for foreclosure of a tax lien, the court shall order the property sold in satisfaction of the amount of the judgment"; "On application by a taxing unit that is a party to the judgment, the district clerk shall prepare an order to an officer authorized to conduct execution sales ordering the sale of the property....").

3. We note that prior to a tax sale, "[i]f the owner pays the amount of the judgment before the property is sold, the taxing unit shall: (1) release the tax lien held by the taxing unit on the property; and (2) file for record with the clerk of the court in which the judgment was rendered a release of the lien." *Id.* § 33.53(e) (Vernon 2001).

4. *See* Tex. Tax Code Ann. § 34.01 (Vernon Supp.2007).

5. The property was offered for sale in accordance with section 33.50 of the Tax Code, and Aldine represents in its briefing that the minimum bid for the property at the September 2, 2003 tax sale was $52,450, which was the adjudged value of the property as reflected in the September 19, 2002 judgment. *See* Tex. Tax.Code Ann. § 33.50 (Vernon 2001). Section 33.50 provides,

(a) In a suit for foreclosure of a tax lien on property, the court shall determine the market value of the property on the date of trial. The appraised value of the property according to the most recent appraisal roll approved by the appraisal review board is presumed to be its market value on the date of trial, and the person being sued has the burden of establishing that the market value of the property differs from that appraised value. The court shall incorporate a finding of the market value of the property on the date of trial in the judgment.

(b) If the judgment in a suit to collect a delinquent tax is for the foreclosure of a tax lien on property, the order of sale shall specify that the property may be sold to a taxing unit that is a party to the suit or to any other person, other than a person owning an interest in the property or any party to the suit that is not a taxing unit, for the market value of the property stated in the judgment or the aggregate amount of the judgments against the property, whichever is less.

(c) The order of sale shall also specify that the property may not be sold to a person owning an interest in the property or to a person who is a party to the suit other than a taxing unit unless:

(1) that person is the highest bidder at the tax sale; and

(2) the amount bid by that person is equal to or greater than the aggregate amount of the judgments against the property, including all costs of suit and sale.

*Id.*

6. "The phrase 'struck off' refers to properties purchased by taxing units at a tax sale when bids are insufficient." *Guajardo v. State*, No. 04–04–00554–CV, 2005 WL 236881, at *1 n. 1 (Tex. App.-San Antonio Feb. 2, 2005, pet. denied) (mem.op.). "Such properties are said to be 'struck off' the tax roll while they are in possession of taxing units because such properties are exempt from taxation." *Id.* at *1 n.

Order of Sale," dated September 26, 2003, recited that by virtue of the order from the court in the underlying cause and based upon the judgment rendered on September 19, 2002, the Constable had been commanded to seize and sell the property, he had properly advertised and provided notice of the sale, and the property had been "struck off to [Aldine] for the use and benefit of itself and ... other taxing units that established liens" in the underlying cause "for the amount of the taxes owing, including interest and penalties." The "Deed Under Order of Sale" further stated that the Constable had granted, sold, and conveyed to Aldine, for the use and benefit of Aldine and the other plaintiff taxing units that had established liens in the underlying cause, "all of the estate, right, title and interest" that the Richey owners had held on September 2, 2003, or at any time afterwards, to the property.

The parties agree that after the property was struck off to Aldine, the property was exempt from taxation and that no additional taxes accrued on the property from September 2, 2003 until January 4, 2005,[7] when Irannezhad purchased the property for $25,000 [8] at a public resale conducted pursuant to section 34.05 of the Tax Code.[9] The "Deed Under Re–Sale Pursuant to Texas Tax Code § 34.05," which was executed to evidence Irannezhad's purchase, identified the Grantor as the Constable "for itself and as trustee for [Aldine]" and the Grantee as Irannezhad. The Deed Under Re–Sale further referenced the date of the "original tax foreclosure sale" of September 2, 2003, and stated,

> Order of Re–Sale: That resolution, order, or ordinance dated June 15, 2004 and passed and adopted by Grantor's governing body at a regularly scheduled meeting and further authorizing the re-sale of the property described herein, previously acquired by Grantor in the following described tax foreclosure proceeding.

> Cause: That cause bearing Cause No.2001–04514 filed in the 151st District Court of Harris County, Texas and styled *Aldine Independent School District. v. Richey Family Trust No. 1.*

The Deed Under Re–Sale further stated that the Constable granted, sold, and conveyed to Irannezhad, who was the highest

1 (citing *State v. Moak*, 146 Tex. 322, 207 S.W.2d 894, 897 (Tex.1948)).

Section 34.01 of the Tax Code, which authorizes the "striking off" of a property to a taxing unit, provides,

> If a bid sufficient to pay the lesser of the amount calculated under Subsection (b) or the adjudged value *is not received,* the taxing unit that requested the order of sale may terminate the sale. *If the taxing unit does not terminate the sale, the officer making the sale shall bid the property off to the taxing unit that requested the order of sale,* unless otherwise agreed by each other taxing unit that is a party to the judgment, for the aggregate amount of the judgment against the property or for the market value of the property as specified in the judgment, whichever is less. . . .

Tex. Tax Code Ann. § 34.01(j) (emphasis added).

**7.** Thus, no taxes accrued for the remainder of 2003, 2004, and a few days in 2005.

**8.** Aldine asserts that Irannezhad's purchase price of $25,000 was far less than the adjudged value of the property of $52,450, which is the adjudged value reflected in the September 19, 2002 judgment. However, as Irannezhad notes, the judgment signed by the trial court on August 7, 2007, which is the judgment that is the subject of the instant appeal, reflects an adjudged market value of the property of $22,485. Neither party explains this discrepancy.

**9.** *See* Tex. Tax Code Ann. § 34.05 (Vernon 2001).

bidder, "all of the estate, the right, title, and interest acquired or held by each taxing unit that was a party to the judgment foreclosing tax liens on the property which the Grantor, for itself, and as trustee for all taxing entities which established tax liens in the above reference cause had in and to the [property]." Finally, the Deed Under Re–Sale noted that the conveyance was subject to any right of redemption remaining to the former owner at the time of resale.

On March 23, 2007, Aldine filed the instant suit against Irannezhad seeking to recover $2,878.11 for delinquent post-judgment taxes, i.e., the taxes that had accrued from the date of the original judgment (September 2, 2002) until the date that the property was struck off to Aldine (September 26, 2003).[10] The trial court rendered judgment in favor of Aldine for $2,799.11 for delinquent taxes for years 2002 and 2003. The trial court further ordered the foreclosure of the tax liens against the property.

### Recovery of Post–Judgment Taxes by Taxing Unit After Resale

In three issues, Irannezhad contends that Aldine was not entitled to recover the post-judgment taxes after Aldine had sold all of its interest in the property to him in 2005, Aldine used "unrelated Texas Tax Code [provisions] to overrule the tax law," and the trial court acted improperly in signing the judgment against him.[11] Irannehezad agrees that post-judgment taxes continued to accrue on the property after the foreclosure judgment.[12] Irannezhad further agrees that a purchaser of property at a tax sale, as opposed to a purchaser of property at a tax resale, purchases the property subject to post-judgment taxes. Nevertheless, Irannezhad argues that because he purchased the property at a tax resale, the post-judgment taxes that had accrued on the property "merged" with the property's title at the time of the resale. In support of his argument, Irannezhad relies on *State v. Moak*, 146 Tex. 322, 207 S.W.2d 894, 897 (Tex.1948).

In *Moak*, multiple taxing units obtained a judgment in 1939 for delinquent taxes that had accrued from 1917 to 1937. *Id.* at 895. A judicial sale of the property, based on the 1939 tax judgment, was conducted on October 7, 1941. *Id.* At the judicial sale, the city, one of the plaintiff taxing units, purchased the property for itself and as trustee for the other plaintiff taxing units "in proportion to the tax recovery awarded by the judgment to each taxing unit." *Id.* The city subsequently sold the property in 1945, and the proceeds from the sale were divided between the taxing units. *Id.* After this sale, the state and county, who were the other plaintiff taxing units to the 1939 judgment, asserted that liens had attached to the property for taxes that had accrued between the date of

---

10. Aldine identified multiple other Harris County plaintiff taxing units, but all of these other taxing units subsequently filed an "Intervenor's Disclaimer," stating that there were no deliquent ad valorem taxes due. These taxing units included Harris County, the Harris County Education Department, the Port of Houston Authority of Harris County, the Harris County Flood Control District, The Harris County Hospital District, North Harris Montgomery Community College District, and two Harris County Emergency Services Districts.

11. As all three issues concern Irannezhad's contention that he purchased the property free and clear of any liens, we consider these issues together.

12. For example, in his brief, Irannezhad does not dispute that the post-judgment taxes accrued, but rather contends that these "taxes were part of the resale."

the 1939 judgment and the date on which the City purchased the property at the tax sale, i.e., the post-judgment taxes. *Id.* Although the court agreed that "taxes continued to accrue against this property after the decree of foreclosure" and that "taxes did fall due for the years embraced in the period now under consideration," it concluded,

> [W]hen the property was acquired by the taxing units at the judicial sale . . ., under an application of the general doctrine of merger it must be held that the liens of the bodies politic which were parties to the suit were *merged into the title they acquired.*
>
> . . . .
>
> The conclusion follows that the liens for taxes held by the State and the County for 1939 through 1941 were, as a matter of law, *merged into the title acquired by the taxing units on October 7, 1941.*

*Id.* at 896 (emphasis added)

Thus, the holding in *Moak* relevant to this appeal is that, at *the time the taxing units acquired the property at the tax sale,* any liens held by the plaintiff taxing units, including any liens that had attached to the property for delinquent post-judgment taxes, merged into the taxing units' title. *Id.* This holding differs from Irannezhad's contention on appeal that the post-judgment taxes merged into his title *at the time he purchased the property at resale.*

Moreover, Aldine contends that the merger doctrine applied in *Moak* has been superseded by multiple sections of the Tax Code, all of which make clear that a taxing unit may seek to recover post-judgment taxes even after a property is struck off to it. Aldine further argues that these provisions, which preserve a taxing unit's rights to pursue post-judgment taxes even after a property is struck off to it, necessarily apply when the property is sold at a tax resale.

Aldine primarily relies on section 33.52(d) of the Tax Code, entitled "Taxes Included in Judgment," and section 34.01 of the Tax Code, entitled "Sale of Property." TEX. TAX CODE ANN. § 33.52 (Vernon 2001), § 34.01. Aldine asserts that both of these sections were amended in 1999 to specifically authorize the recovery of post-judgment taxes in circumstances like those presented here.

Section 33.52 provides, in relevant part,

> (a) Only taxes that are delinquent on the date of a judgment may be included in the amount recoverable under the judgment by the taxing units that are parties to the suit.
>
> . . . .
>
> (d) A taxing unit's claim for *taxes that become delinquent after the date of the judgment is not affected by the entry of the judgment or a tax sale conducted under that judgment. Those taxes may be collected by any remedy provided by this title.*

*Id.* § 33.52(a), (d) (emphasis added).

Section 34.01 provides, in relevant part,

> (k) The taxing unit to which the property is bid off takes title to the property for the use and benefit of itself and all other taxing units that established tax liens in the suit. The taxing unit's title includes all the interest owned by the defendant, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption. Payments in satisfaction of the judgment and any costs or expenses of the sale may not be required of the purchasing taxing unit until the property is redeemed or resold by the purchasing taxing unit.

(*l*) *Notwithstanding that property is bid off to a taxing unit under this section,* a taxing unit that established a tax lien in the suit *may continue to enforce collection of any amount for which a former owner of the property is liable to the taxing unit, including any post-judgment taxes,* penalties, and interest, *in any other manner provided by law.*

(m) The officer making the sale shall prepare a deed to the purchaser of real property at the sale, to any other person whom the purchaser may specify, or to the taxing unit to which the property was bid off....

(n) The deed vests good and perfect title in the purchaser or the purchaser's assigns *to the interest owned by the defendant in the property subject to the foreclosure,* including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption....

*Id.* § 34.01(k)-(n) (emphasis added).

The plain language of sections 33.52(d) and 34.01(*l*), as amended in 1999, defeats Irannezhad's efforts to avoid liability for the post-judgment taxes. *See id.* § 33.52(d), 34.01(*l*). First, section 33.52(d) provides that a taxing unit's claim to post-judgment taxes "is not affected by the entry of the judgment or a tax sale conducted under that judgment" and that post-judgment taxes may be collected following a tax sale by any remedy provided by this title. *Id.* § 33.52(d). Title I, the title referenced in section 33.52(d), is entitled "Property Tax Code," and this title

includes Chapter 33, which is entitled "Delinquency," and Chapter 34, which is entitled "Tax Sales." [13] Nothing in Chapters 33 and 34 of the Tax Code indicates that the provisions contained therein are so narrowly limited so as to apply only to an original tax sale and not a resale occurring after a property is struck off to a taxing unit. In fact, Chapter 34 specifically authorizes both tax sales and tax resales to satisfy tax liens. *See* TEX. TAX CODE ANN. §§ 34.01–34.23 (Vernon 2001 & Supp.2007).

Had the Legislature sought to so narrowly limit the provision in section 33.52(d) that allows a taxing unit to pursue post-judgment taxes unaffected "by the entry of ... a tax sale conducted under that judgment," it could have plainly stated such a limitation. Here, the Deed Under Resale specifically referenced the underlying cause and the original foreclosure judgment. We conclude that the resale constituted a "tax sale conducted under [the September 3, 2003] judgment," and, thus, section 33.52(d)'s provision, preserving a taxing unit's claim to post-judgment taxes after a tax sale, applied to preserve Aldine's claims for post-judgment taxes against Irannezhad.

Second, section 34.01(*l*) provides that "[n]otwithstanding that property is bid off to a taxing unit under this section, a taxing unit that established a tax lien in the suit may continue to enforce collection of any amount *for which a former owner of the property is liable to the taxing unit, including any post-judgment taxes, penalties, and interest, in any other manner provided by law.*" [14] *Id.* § 34.01(*l*). We

---

13. Title 1 is entitled "Property Tax Code." *See* TEX. TAX.CODE ANN. tit. 1 (Vernon 2001 & Supp. 2007).

14. In support of its argument that the 1999 amendments to section 34.01(*l*) authorize its recovery of delinquent post-judgment taxes

against Irannezhad, Aldine cites the bill analysis for these amendments, which provides that Section 34.01(*l*),

[a]uthorizes a taxing unit that established a tax lien in the suit to continue *to enforce collection of any amount due from the owner for which a former owner of the property is*

conclude that section 34.01(*l*) plainly authorizes a taxing unit, even after a property is struck off to it, to pursue post-judgment taxes for which a former owner is liable.

Irannezhad complains that the above-cited sections do not apply to tax resales, and he asserts that we should only apply section 34.05 of the Tax Code, which is specifically entitled "Resale by Taxing Unit," in determining if he acquired the property free and clear of any tax liens. Irannezhad contends that our inquiry is governed by section 34.05(e) which provides, in relevant part,

> (e). . . . [T]he sheriff or constable selling real property under Subsections (c) and (d) shall execute a deed to the property *conveying to the purchaser the right, title, and interest acquired or held by each taxing unit* that was a party to the judgment foreclosing tax liens on the property. The conveyance shall be made subject to any remaining right of redemption at the time of the sale.

*See* Tex. Tax Code Ann. § 34.05(e) (emphasis added).

We have already rejected Irannezhad's assertion that section 33.52 and 34.01 apply only to tax sales as opposed to tax resales. Moreover, none of the above-cited sections of the Tax Code supports Irannezhad's contention that he acquired the property at the tax resale "free and clear" of any liens for post-judgment taxes that

---

*liable to the taxing unit, including any post-judgment taxes,* penalties, and interest, *in any other manner provided by law, notwithstanding that the property has been bid off to a taxing unit under this section.*
House Ways & Means Comm., Bill Analysis, Tex. H.B. 3549, 76th Leg., R.S. (1999) (emphasis added).
Aldine also notes that during the 77th legislative session in 2001, bills were introduced in both the House and Senate attempting to reverse the effect of the 1999 amendments to sections 33.52(d) and 34.01(*l*), which specifically authorized a taxing unit to recover post-judgment taxes even after a property is struck off to it. Senate Bill 880 proposed the following language to amend section 34.01(*l*):
(*l*) All of a taxing unit's existing liens of any character that are not included and foreclosed in a tax foreclosure judgment *or that attach to the foreclosed property after the signing of the judgment are extinguished as to that property, and the taxes or other claims secured by those liens are cancelled and forever barred, if: (1) the taxing unit established its delinquent tax liens as a participant in the judgment, and (2) the property is bid off to a taxing unit* under Subsection (j) or (o).
Tex. S.B. 880, 77th Leg., R.S. (2001) (emphasis added). The bill analysis for this proposed amendment stated that the amending language,

Provides that all of a taxing unit's existing liens of any character that are not included and foreclosed in a tax foreclosure judgment or that attach to the foreclosed property after the signing of the judgment are extinguished as to that property, and the taxes or other claims secured by those liens are canceled and forever barred, given certain conditions. Deletes text authorizing a taxing unit that established a tax lien in the suit to continue to enforce collection of any amount for which a former owner of the property is liable to the taxing unit.
Sen. Comm. On Intergovernmental relations, Bill Anlaysis, Tex. S.B. 880, 77th Leg., R.S. (2001) (emphasis added). Senate Bill 880 also contained a provision to amend section 33.52(d) by adding the language, "[e]xcept as provided by Section 34.01(*l*)," at the beginning of the subsection. *See id.* A companion bill in the house was offered with language proposing identical amendments to sections 33.52(d) and 34.01(*l*). *See* Tex. H.B. 490, 77th Leg., R.S. (2001). These amendments, if adopted, would have precluded Aldine from pursuing the recovery it seeks in the instant case. However, Senate Bill 880 was never enacted into law, and House Bill 490 became law only after the proposed amending language to sections 33.52(d) and 34.01(*l*) was deleted.

accrued before the property was struck off to Aldine. *See id.* § 34.01(n) ("The deed vests good and perfect title in the purchaser or the purchaser's assigns *to the interest owned by the defendant in the property subject to the foreclosure* ....").

In accordance with sections 33.52(d) and 34.01(*l*), we hold that the Tax Code authorized Aldine, even after the property was struck off to it, to pursue recovery of these post-judgment taxes from Irannezhad after the tax resale.[15]

We overrule Irannezhad's three issues.

## Conclusion

We affirm the judgment of the trial court.

---

**15.** To the extent that *Moak* dictates otherwise, then *Moak* is in conflict with section 33.52(d) and 34.01(*l*) and has been superseded by the Legislature.